TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
BENEDETTO L. BALDING (Cal. Bar No. 244508)
Assistant United States Attorney
Deputy Chief, International Narcotics,
  Money Laundering, and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2274
     Facsimile: (213) 894-0142
     E-mail:    benedetto.balding@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:20-556-MCS |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT SUSANA RAMIREZ OROZCO |
| v. | |
| SUSANA RAMIREZ OROZCO, | |
| Defendant. | |

1. This constitutes the plea agreement between Susana Ramirez Orozco ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

   a. At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the

indictment in United States v. Susana Ramirez Orozco, CR No. 2:20-556-MCS, which charges defendant with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).

       b. Not contest facts agreed to in this agreement.

       c. Abide by all agreements regarding sentencing contained in this agreement.

       d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

       e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

       f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

       g. Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

## THE USAO'S OBLIGATIONS

3. The USAO agrees to:

       a. Not contest facts agreed to in this agreement.

       b. Abide by all agreements regarding sentencing contained in this agreement.

       c. At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable

Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

   d. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

   e. Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 21 or higher. For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

## NATURE OF THE OFFENSE

 4. Defendant understands that for defendant to be guilty of the crime charged in count one, that is, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), the following must be true: (1) there was an agreement between two or more persons to commit the crime of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), that is, to (a) conduct or attempt to conduct a financial transaction, (b) knowing that the property involved in such a financial transaction represents the proceeds of some form of unlawful activity, (c) which transaction in fact involves the proceeds of specified unlawful activity, and (d) knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control

of the proceeds of specified unlawful activity; and (2) defendant willfully joined in the agreement knowing of its unlawful purpose.

PENALTIES

5. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1956(h) is: 20 years' imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or

revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

8. Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is automatic removal from the United States.

## FACTUAL BASIS

9. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 11 below but is not meant to be a complete recitation of all facts relevant to the

underlying criminal conduct or all facts known to either party that relate to that conduct.

From an unknown date until on or about July 10, 2020, defendant Susana Ramirez Orozco ("defendant") conspired with other individuals, including, but not limited to, Co-conspirator 1, Co-conspirator 2, and Co-conspirator 3, to launder and repatriate to Mexico bulk cash currency generated from the sale of illegal drugs in the United States. This was done using wire transfers from the United States to Mexico, and defendant directed some of these transfers. Defendant, along with Co-conspirator 1 and Co-conspirator 2, coordinated offering "money contracts" to money-laundering brokers – namely, the arrangements for the delivery of bulk cash drug proceeds located in the United States, belonging to Co-conspirator 3, to Mexico.

In or around March 2020, defendant contacted an individual she believed to be capable of brokering money contracts but who was, in fact, a confidential source working with law enforcement ("CS-1"), and offered CS-1 a money contract to retrieve $100,000 located in Cleveland, Ohio. Defendant also informed CS-1 that she was working with Co-conspirator 2. The amount to be picked up was revised shortly thereafter to be $20,000. CS-1, in turn, introduced to defendant the individual who would purportedly be working on CS-1's behalf to handle transactions in the United States, who was in fact an undercover law enforcement agent ("UC-1"). After CS-1 introduced UC-1, defendant offered the Cleveland, Ohio-based money contract to UC-1. On or about April 9, 2020, defendant provided the contact information of the individual, a courier, in Cleveland ("Courier 1") who was to deliver drug proceeds to CS-1's and UC-1's associate and separately confirmed with UC-1 that defendant had provided such

information. Defendant's co-conspirator, a Cleveland-based courier ("Courier 1"), subsequently contacted an undercover agent purporting to be UC-1's Cleveland-based associate ("UC-2"), and arranged with UC-2 for another courier in Cleveland ("Courier 2") to deliver the funds to UC-2. Courier 2 ultimately delivered $19,980 in bulk cash drug proceeds in Cleveland to UC-2, and law enforcement transferred those funds to an undercover law enforcement-controlled bank account in Los Angeles, California (the "UC Account"). Defendant subsequently provided CS-1 and UC-1 with bank account information regarding where to wire-transfer the funds. Law enforcement subsequently transferred the funds (less a commission) to a Mexico-based bank account as directed by defendant. On April 18, 2020, defendant sent a photograph of a bank receipt to UC-1 confirming that defendant had received the funds.

Following the April 9, 2020 transaction, defendant offered a money contract to UC-1 to have $65,000 in bulk cash drug proceeds (belonging to Co-conspirator 3) remitted to Mexico from the United States. On or about May 5, 2020, defendant provided to CS-1 and to UC-1 the contact information of the Cleveland-based courier ("Courier 3"), who would deliver the funds in Cleveland. Courier 3 then contacted an undercover law enforcement agent purporting to be UC-1's Cleveland-based associate ("UC-3") and delivered $28,845 in bulk cash drug proceeds to UC-3 in Cleveland, Ohio, concealed with postal wrapping inside a trash bag inside a shoulder bag. Law enforcement then transferred those funds to the UC Account and, after defendant provided CS-1 and UC-1 with bank account information regarding where to wire-transfer the funds, the funds (less a commission) were

subsequently wire-transferred to two Mexico-based bank accounts as directed by defendant.

On or about May 26, 2020, defendant offered UC-1 a money contract to have drug proceeds remitted to Mexico from Cleveland, Ohio.  Defendant passed to UC-1 the contact information of her Cleveland-based courier ("Courier 4"), who would deliver the funds in Cleveland.  Courier 4 then contacted an undercover law enforcement agent purporting to be UC-1's Cleveland-based associate ("UC-4") and delivered $43,555 in bulk cash drug proceeds in Cleveland, Ohio.  Law enforcement then transferred those funds to the UC Account and, after defendant provided UC-1 with bank account information regarding where to wire-transfer the funds, the funds (less a commission) were subsequently wire-transferred to a Mexico-based bank account as directed by defendant.

On May 27, 2020, after UC-1 informed defendant that the commissions UC-1 was collecting from the previous Cleveland-based money contracts were not sufficient to justify the risk and effort involved, defendant arranged a telephone call between defendant, Co-conspirator 1, Co-conspirator 2, and UC-1, to attempt to convince UC-1 to accept future money contracts.  On that call, Co-conspirator 2 told UC-1 that Co-conspirator 2, Co-conspirator 1, and defendant had a client (Co-conspirator 3) who could offer money contracts to UC-1 to move approximately $400,000 each month, for which UC-1 would receive a 5% commission.  Between June 3 and June 9, 2020, defendant arranged several telephone calls between defendant, Co-conspirator 1, and UC-1, in which Co-conspirator 1 discussed drug trafficking with UC-1 and informed UC-1 that defendant and Co-conspirator 1 were working with Co-conspirator 3 and his associates.  Co-conspirator 1,

8

on multiple telephone calls set up by defendant and in which defendant participated, asked UC-1 if UC-1 could also administer a warehouse in Cleveland used by Co-conspirator 3 and his associates to store drugs and bulk cash drug proceeds.

On June 9, 2020, defendant offered UC-1 a money contract to pick up approximately $100,000 in bulk cash drug proceeds in Cleveland, Ohio, which was to be the first of four weekly money contracts (totaling approximately $400,000 over the course of a month, as discussed above). Defendant arranged for Courier 4 to deliver the funds to an undercover law enforcement agent purporting to be UC-1's Cleveland-based associate. Before the exchange took place, law enforcement seized $91,900 in bulk cash drug proceeds in Cleveland, Ohio from Courier 4.

In total, defendant coordinated at least four money contracts amounting to approximately $184,280 in drug proceeds. When defendant engaged in the foregoing activities, she knew that the funds were the proceeds of the distribution of controlled substances and that the purpose of the transactions was to disguise the source, origin, nature, ownership, and control of the proceeds of the distribution of controlled substances.

## SENTENCING FACTORS

10. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

11. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 8 | [U.S.S.G. §§ 2S1.1(a)(2), |
| Specific Offense Characteristics | +10 | 2B1.1(b)(1)(F)] |
| Defendant Knew or Believed that the Laundered Funds Were Drug Trafficking Proceeds: | +6 | [U.S.S.G. § 2S1.1(b)(1)] |
| Section 1956 Conviction: | +2 | [U.S.S.G. § 2S1.1(b)(2)(B)] |
| Adjustment [Minor Role]: | -2 | [U.S.S.G. § 3b1.2(b)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

12. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

13. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.   The right to persist in a plea of not guilty.

10

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel – and if necessary have the court appoint counsel - at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

14. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that

11


the statement of facts provided herein is insufficient to support defendant's plea of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

15.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 21 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

16.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, that newly discovered evidence purportedly supports defendant's innocence, and any and all claims

that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

17. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 21 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

18. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

19. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

20. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

21. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

22. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

    a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

   c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>
<u>OFFICE NOT PARTIES</u>

 23. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

 24. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it

chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 11 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

25. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

26. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

27. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney

_____   12/2/21
BENEDETTO L. BALDING          Date
Assistant United States Attorney

_____   12/01/2021
SUSANA RAMIREZ OROZCO          Date
Defendant

_____   12/1/2021
RICHARD RAYNOR                 Date
Attorney for Defendant
SUSANA RAMIREZ OROZCO

CERTIFICATION OF DEFENDANT

This agreement has been read to me in Spanish, the language I understand best. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering

into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement or in an agreement signed by all parties or on the record in court. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____   12/01/2021
SUSANA RAMIREZ OROZCO            Date
Defendant

### CERTIFICATION OF INTERPRETER

I, _Kathleen Caulfield_, am fluent in the written and spoken English and Spanish languages. I accurately translated this entire agreement from English into Spanish to defendant Susana Ramirez Orozco on this date.

_____   12/1/2021
INTERPRETER                      Date

18

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Susana Ramirez Orozco's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement or in an agreement signed by all parties or on the record in court; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is informed and voluntary; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____     12/1/2021
RICHARD RAYNOR                       Date
Attorney for Defendant
SUSANA RAMIREZ OROZCO